**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK DESHAWN BRIDGES, | No. 09-56931 |
| Petitioner - Appellant, | D.C. No. 2:06-cv-05816-CAS-AGR |
| v. | |
| L. S. MCEWEN, Warden, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted April 8, 2013
Pasadena, California

Before: BERZON, TALLMAN, and M. SMITH, Circuit Judges.

Mark Bridges, Jr., appeals from the district court's denial of his petition for a

writ of habeas corpus under 28 U.S.C. § 2254. He seeks to set aside his conviction

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

for first-degree murder and attempted murder on grounds of ineffective assistance of counsel ("IAC").

Bridges has not shown that the state court's rejection of his IAC claims was "contrary to" or "involved an unreasonable application of" *Strickland v. Washington*, 466 U.S. 668 (1984). *See* 28 U.S.C. § 2254(d)(1). Because Bridges has not surmounted the "doubly deferential" review applicable when *Strickland* and the Antiterrorism and Effective Death Penalty Act ("AEDPA") operate "in tandem," *Walker v. Martel*, 709 F.3d 925, 941 (9th Cir. 2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)) (internal quotation marks omitted), we affirm the district court's denial of his petition.

**1.** Bridges's IAC claims fall under three headings: 1) counsel's treatment of evidence regarding a .38-caliber revolver; 2) pretrial preparation and investigation of a second shooter or shooting; and 3) failure to retain ballistic evidence and consult a ballistics expert prior to trial. The certificate of appealability ("COA") issued by this court does not expressly cover Bridges's claim related to the .38-revolver. But the government did not argue that this issue falls outside the scope of the COA, and both parties addressed the merits of the claim in their briefs. We construe the ballistics claims in the COA as encompassing Bridges's IAC claim

regarding the .38-caliber revolver. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Ybarra v. McDaniel*, 656 F.3d 984, 997 (9th Cir. 2011).[1]

**2.** The trial attorney's actions in examining Bridges's father and in declining to submit the 38-revolver in the father's possession for ballistic testing were not sufficiently prejudicial, even if ineffective, to merit habeas relief. *See Strickland*, 466 U.S. at 687, 694–95. Bridges and his father had presented opposing stories regarding the gun when they spoke to police officers before trial. Bridges's lawyer therefore faced a potential impeachment problem no matter which version the father adopted on the stand. As to the physical evidence, the only foundation for asserting that the .38 revolver in the father's possession was the weapon Bridges used in the shooting was Bridges's own testimony. Given the multiple contradictions in Bridges's statements before and during trial; inconsistencies at trial in his father's account of what happened to the gun that Bridges claims to have given to him following the shooting; the evidence establishing that the murder weapon was quite probably a nine-millimeter semiautomatic pistol; and the overall strength of the prosecution's case, it is unlikely that the jury's verdict

---

[1] Alternatively, we grant a COA as to the IAC claim concerning the .38-caliber revolver. *See* 9th Cir. R. 22-1(e).

would have differed had the father stated from the outset that he had been given the .38 revolver after the shooting, or had the attorney produced such a gun for forensic investigation.

**3.** Bridges has not presented evidence of an independent shooter adequate to suggest that his trial counsel was ineffective for not investigating that theory. Bridges's attorney cannot be said to have performed deficiently for failing to interview or call the potential witnesses identified by Bridges. None of them reported seeing an independent shooter; one identified Bridges as the shooter; and as to statements they made soon after the event that could suggest the presence of another shooter, no proffer of admissible evidence was submitted on habeas under oath as to what, if anything, they could or would have testified to if called. *See Allen v. Woodford*, 395 F.3d 979, 1002 n.2 (9th Cir. 2005); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 486–87 (9th Cir. 2000). For the same reason, Bridges has not shown that he was prejudiced by the attorney's failure to pursue those witnesses. *See Jackson v. Calderon*, 211 F.3d 1148, 1154–55 (9th Cir. 2000).

**4.** With respect to the location of the nine-millimeter shell casings found at the scene, the late-blooming evidence from eyewitness John Ausbon—that some casings were retrieved close to where the injured victim lay—is not irreconcilable

-4-

with the trial testimony concerning the location of the shooter. Witnesses at trial indicated that the shooter may have been moving toward the victims while firing his weapon. Bridges therefore has not shown a reasonable probability that this evidence would have changed the jury's verdict.

5. Bridges has not demonstrated a reasonable probability that he would not have been convicted had his trial attorney consulted a ballistics expert. The findings of the expert retained by defense counsel post-trial did not controvert the state's evidence that the same gun fired the bullets found in both victims. Nor did the expert's findings indicate that more than one weapon was fired at the crime scene. With respect to the trajectory of the fatal bullet recovered from the body of the murder victim, defense counsel stipulated that the defendant's ballistics expert would testify that a bullet discharged from a nine-millimeter firearm could travel up to 1500 feet, if the muzzle of the gun were raised slightly above level—a trajectory which was consistent with at least some accounts of the manner in which Bridges was seen shooting. In sum, the post-trial ballistics evidence did not refute the prosecution's theory that Bridges was the sole shooter and that he fired a nine-millimeter gun, striking both victims. It was therefore not objectively unreasonable for the state court to reject this claim under *Strickland*'s prejudice prong.

**6.** Finally, the California Court of Appeal's summary denial of Bridges's habeas petition indicates that the court concluded Bridges had not made out a prima facie case for relief, even assuming the truth of the factual allegations in his petition and the credibility of the accompanying declarations. *See In re Reno*, 55 Cal. 4th 428, 447 (2012), *as modified on denial of reh'g* (Oct. 31, 2012); *People v. Duvall*, 9 Cal. 4th 464, 474–75 (1995). For the reasons discussed above, this conclusion was not unreasonable. Accordingly, an evidentiary hearing was unnecessary. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1147–48 (9th Cir. 2012) (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)), *cert. denied*, 133 S. Ct. 1262 (2013)).

**AFFIRMED.**